IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA

**LESLIE FERDERIGOS**,

Plaintiff,

v.

**THE FLORIDA BAR and**

**FLORIDA SUPREME COURT**,

Defendants.

## <u>VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF</u>

COMES NOW, Plaintiff, Leslie Ferderigos, [hereinafter "Ferderigos" or "Plaintiff" and sues the Defendants, The Florida Bar (hereinafter "TFB") and Florida Supreme Court for an order granting declaratory relief and injunctive relief, under the Americans with Disability Act (ADA), Florida Civil Rights Act of 1992, Fla. Stat. Ann. § 760.01, Florida False Claims Act Fla. Stat. Ann. § 68.081, Federal Declaratory Judgment Act, stating:

## <u>PARTIES</u>

1. Ferderigos is a citizen of the United States, a resident of Florida, domiciled in Orange County, Florida, more than eighteen years of age, an attorney since (04-22-2017), and a member in continuous good standing of The Florida Bar from (04-22-2017 to present).

2. The Florida Supreme Court is the highest state court in Florida. Article V, Section 15 of the Florida Constitution states that it "shall have exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted." It disciplines lawyers with its "official arm," the defendant, The Florida Bar.

## JURISDICTION

3. The Court has subject matter jurisdiction under Americans with Disability Act (ADA), Florida Civil Rights Act of 1992, Fla. Stat. Ann. § 760.01, Florida False Claims Act Fla. Stat. Ann. § 68.081,

## VENUE

4. This is the appropriate venue for this action as it is the Orlando Office of the Defendant, TFB, the official arm of the Defendant, The Florida Supreme Court, located in this Middle District, that prosecuted the Plaintiff, through the personnel in that office, in violation of the Plaintiff's rights under the Americans with Disabilities Act (ADA) Florida Civil Rights Act of 1992, Fla. Stat. Ann. § 760.01, Florida False Claims Act Fla. Stat. Ann. § 68.081, Florida Supreme Court.

## INTRODUCTION

5. According to the American Bar Association's 1992 Report of the Commission on Evaluation of [Lawyer] Disciplinary Enforcement (the "McKay Report"), "it was recommended to eliminate local disciplinary enforcement as previously recommended in the Clark Report of 1970. However, at least twelve jurisdictions still have significant local components in their disciplinary systems, including Florida. Local components, such as local bar investigative committees, foster cronyism as well as prejudice against unpopular Plaintiffs. Local components result in a lack of uniformity in procedures and in the application of the rules of professional conduct. Local components promote delay in the handling of disciplinary cases." The American Bar Association has warned for decades that it should not be a local bar investigative committee that will apply the rules of professional conduct to decide whether an ethics inquiry becomes a Bar Complaint. Under the Rules Regulating TFB, the local Grievance Committee," decides whether an ethics inquiry becomes a Bar Complaint.

6. John T. Berry, served as one of the members of the commission, in the creation of the McKay Report, while serving as Staff Counsel for the Florida Bar and Director of the Legal Division composed of Lawyer Regulation, Ethics, Unlicensed Practice of Law and Advertising. However, Florida was one of the few states who did not take the recommendations of the McKay

Report, by continuing to allow the fate of attorneys to lie in the hands of local committees that could be prejudicial.

7. In 2020, the Plaintiff received national recognition on various news stations for her work in restoring the rights to wards in several guardianships. Because of how the guardianship statute allows attorneys to bill the ward's estate, several attorneys lost income on various cases of the Plaintiff when the ward's right were restored.

8. Additionally, during 2020, the Plaintiff became a guest speaker for the Palm Beach Clerk of Court, on Guardianship Fraud she was encountering within the Courts, educating the Guardianship Fraud division, on what to look for within the docket as red flags, to further investigate.

9. In retaliation of the Plaintiffs success in restoring the rights of several wards in guardianships, several guardians and attorneys for guardians, began to file bar complaints against the Plaintiff. All the bar complaints were sent to the same local investigator, David Pennell, and Bar Counsel, Karen Bankowitz, Esq for the Plaintiff's investigation within the local committee of Orange County. Additionally, the Director of Intake/ ACAP, who determines which complaints will be dropped or pursued, is a member of the Elder Law Attorney Group within the Florida Bar and practiced in the area of Guardianship for 41 years.

10. The Florida Bar has a non-profit foundation, that historically, has donated large sums of money to guardianship programs in Miami-Dade County. In 2020, according to public records, one of their largest donations, of $210,000 was donated to The South Dade Guardianship Economic Development Project. Furthermore, TFB Non-profit historically has contributed large donations to Miami-Dade Guardianship programs, as evidenced through public records.

11. On February 18, 2021, the Plaintiff terminated her paralegal, who criminally extorted her, stole property of her law firm, and having knowledge that the Plaintiff was unpopular within the Elder Law Community for her work in exposing fraud within Guardianships. The Plaintiff's formal paralegal joined up with an Elder Law Attorney, where they engaged in a campaign to destroy the Plaintiff's career by recruiting former client's of the Plaintiff, to file voluminous Bar Complaints against the Plaintiff, in exchange for free legal representation. There is a criminal case pending on these issues in the 9th District Court, case no. 48-2022-NM-003572. Despite the Plaintiff giving written voluminous evidence to TFB proving these Bar Complaints were the furtherance of criminal extortion, TFB did not drop these complaints at intake and send them to the investigative local committee and these complaints have remained pending for almost 2 years and still remain pending.

12. The Complainant who wrote the Bar Complaint, who was also the Former Paralegal to the Plaintiff, wrote attorney-client privileged information within her Bar Complaint, which was adopted by subsequent Complainants. The Complainant, Former Paralegal, took measures, with the Elder Law Attorneys where she sent her complaint to Judges, Guardian Ad Litems, Attorneys, and the Public. TFB Florida Bar Local Committee was copied in email threads as she dispersed these complaints, causing harm to 4 of the Plaintiff's clients, causing harm to the Plaintiff's law firm, family, and self.

13. During this time, the Plaintiff received death threats against her children, her law practice went out of business, and she suffered grave emotional and mental destress, leading to the complete destruction of her reputation throughout the legal community and public.

14. The Bar had knowledge, the Plaintiff was treated for bipolar disorder, and took no measures to stop the circulation of these Bar Complaints for the protection of the public and the Plaintiff. This resulted in the Plaintiff becoming completely debilitated, where she missed 2 hearings and was late on an appeal, something she had never done before. After the Plaintiff missed these two hearings and was late on an appeal, the Judiciary filed complaints against the Plaintiff.

15. Towards the end of 2022, Local Bar Counsel for TFB, immediately filed 2 formal complaints once the Judiciary reported the Plaintiff for missing two hearing and an appeal, leaving the rest of the Bar Complaints that had been pending for two years in the investigation status.

16. On January 9, 2023, the Plaintiff was suffering from depression from enduring the harassment and humiliation that resulted from the local bar investigation and notified her therapist with the Florida Lawyers Assistant Program (FLA), an entity funded by TFB. The Plaintiff gave permission to the local Bar Counsel to speak with her therapist, to validate that she needed to take a temporary leave from practicing law and stabilize her current mental state. However, the local Bar Counsel, Karen Bankowitz, Esq. took no measures to contact the Plaintiff's therapist and instead, notified a staff member of the FLA, who had no first-hand knowledge of the Plaintiff's current mental state. At this point local Bar Counsel for TFB, Karen Bankowitz, Esq. told this 3rd party the Plaintiff was suicidal, knowing this staff member was mandated to report to authorities. At 6pm on January 9, 2023, police showed up at the Plaintiff's door to Baker Act her while she was with her three small children, traumatizing them. The Plaintiff was not Baker Acted, as she was not suicidal.

17. There is a two day trial set for February 27 & 28, 2023, and the Plaintiff requested, at the direction of her psychiatrist, to have it continued for three

months on January 10, 2023 thru a filed motion to stay all Court proceedings for 3-months, to allow her to stabilize herself with new medication. However, the referee refused to grant the continuance, and refused to allow an evidentiary hearing on the Plaintiff's request for a continuance.

18.    An order was entered in November of 2022 for both cases against the Plaintiff, Case no. SC22-1353 and SC2022-1749 in the Florida Supreme Court citing rule 3-7.6, that the Plaintiff cannot seek any remedies with the Florida Supreme Court, while her case is pending before the referee. Thus, the Plaintiff has no place to seek a remedy from the Referee's order denying her continuance. Florida Supreme Court Order Cites:

> Plaintiff is again advised that, pursuant to rule 3-7.6(h)(5)(B), Rules Regulating the Florida Bar, all pleadings, motions, notices, and orders filed after appointment of a referee must be filed with the referee, not with the Florida Supreme Court. While this case is pending before the referee, any future filings from Plaintiff that are not authorized for filing in this Court pursuant to the Rules Regulating the Florida Bar will not be docketed in this case.

19. The Plaintiff requested to consolidate the formal pending complaints and for TFB to determine whether they would be pursing formal complaints on the Bar Complaints that have been in investigative status for two years, so all complaints could be heard together, to demonstrate the Plaintiff's defense that the humiliation and harassment she received during this two

year investigation, resulted in her missing two hearings and being late on her appeal. However, her motion to consolidate was denied without any opportunity for an evidentiary hearing on this matter.

20. On January 23, 2023, the Plaintiff was given the Staff Investigators report for the first time, that lead to a finding on probable cause for two of the counts in the Formal Complaint, where it was discovered that the Staff Investigator, David Pennell,  submitted false reports, easily verified by reading the transcripts, among other verifiable evidence that was not listed, but had been turned over during the investigation.

21. The Plaintiff has reached out to the Inspector Generals Office to report the false report, among other issues, however, she received a written letter, that jurisdiction on any matter involving TFB, would need to be taken up with the Board of Governors.

22. The Plaintiff has repeatedly, notified the Board of Governors, as to what is taking place during this two-year investigation, however, no one has made any effort to contact her to resolve any issues.

23.    During TFB Disciplinary Investigation that started in 2020 and remains pending, TFB has accepted voluminous communications with the complainants and has been the point of contact throughout each investigation against the Plaintiff. TFB had been noticed and aware of all the actions the complainants were taking against the Plaintiff, which

included actively campaigning and publishing false and discriminatory statements against the Plaintiff during the investigative process, while hashtagging the Florida Bar and the Staff Investigator, David Pennell.

24. Voluminous discriminatory statements and false statements were publicly published throughout social media with the Florida Bar Hashtag on it by the complainants. Statement published that the Plaintiff "Is Crazy" "Has a Personality Disorder" "Is a criminal", among numerous other comments with the Florida Bar Hashtagged. TFB was made aware and noticed on this by the Plaintiff several times during the investigation. The Plaintiff requested to have the Complainants cease including the Florida Bar's name on these false and discriminatory statement published to the public. These false and discriminatory statements were being published during the investigative process that was supposed to remain confidential. Rule 3-7(k) states:

> Response to False or Misleading Statements. If public statements that are false or misleading are made about any otherwise confidential disciplinary case, The Florida Bar may disclose all information necessary to correct such false or misleading statement.

25. TFB was noticed and aware of several false and misleading statements made against the Plaintiff by the Complainants to the public and the legal community. Yet, TFB failed to take any action to stop it. This has highly

prejudiced the Plaintiff in the legal community, causing extreme scrutiny with various Judges and Lawyers. Ultimately, contributing to the influx in bar complaints by Attorneys.

26.    Under 3-7.1(a) a complainant is not to disclosure information during an investigation that is considered attorney client privilege. During the investigation, the former paralegal for the Plaintiff published her bar complaint against the Plaintiff throughout the public and the legal community, which contained information protected under attorney-client privilege, involving the Plaintiff's clients. The Former paralegal/Complainant published and distributed attorney-client privileged information in case 2020DR003562 in Pinellas County, where Judge Pollack served as Judge, when she published statements to the lawyers, guardian ad litem, and judge in that case from her bar complaint. In result, the Plaintiff had to withdraw from the case to avoid attending a hearing that was ordered by Judge Pollack, where the Plaintiff would have to testify against her own client to negate the statements former paralegal published to the Court. Ironically, after this ordeal, Judge Pollack files a bar complaint against the Plaintiff for missing a hearing and imposes severe sanctions against her. TFB was notified promptly by the Plaintiff to the actions the former paralegal was taking, yet did nothing to stop it. TFB's failure to stop former paralegal/complainant from publishing her bar complaint all over

the legal community, caused even more damage to the Plaintiff and her clients. The failure to act by TFB caused damage to the Plaintiff, her clients, and interfered in the procedures of the court, wasting valuable time and money.

27.    The Former Paralegal/Complainant's Bar Complaint remains pending for reasons unknown, despite voluminous affidavits, evidence, witnesses, and being directly connected to a criminal case, evidencing these complaints were in furtherance of criminal extortion.

28.    On February 7, 2021, one of the individuals involved in the criminal conspiracy, Kyle Fletcher, Esq. appeared in another case where the Plaintiff was attorney of record, case no. 2017GA0012000 in Seminole County and filed a Notice of Filing Foreign Pleading of Interest, where he specifically requests for the Court to overturn a favorable ruling for the Plaintiff's client, referencing the Bar Complaint filed by the Plaintiff's Former paralegal. Under Florida Rules of Ethics for disciplinary investigations they had a duty to keep attorney-client privileged information confidential and could have taken measures to protect this information when TFB was copied in emails when this confidential information was being dispersed to 3rd parties. Rule 3-7.1(A) states:

> (a) Scope of Confidentiality. All records including files, preliminary investigation reports, interoffice memoranda, records of investigations, and the records

in trials and other proceedings under these rules, except those disciplinary matters conducted in circuit courts, are property of The Florida Bar. All of those matters are confidential and will not be disclosed except as provided in these rules. When disclosure is permitted under these rules, it will be limited to information concerning the status of the proceedings and any information that is part of the public record as defined in these rules. Unless otherwise ordered by this court or the referee in proceedings under these rules, nothing in these rules prohibits the complainant, Plaintiff, or any witness from disclosing the existence of proceedings under these rules, or from disclosing any documents or correspondence served on or provided to those persons except where **disclosure is prohibited in chapter 4 of these rules or by statutes and caselaw regarding attorney-client privilege**

29. During 2021, while the Plaintiff was involved in case no. 2019-009867 in Miami-Dade County, the former paralegal emailed her Bar Complaint, containing privileged information to Dori Foster-Morales, Esq. (opposing counsel in this case), former President of the Florida Bar, along with the Plaintiff. During this case, Ms. Foster-Morales, Esq. and the Judge assigned disrespected the Plaintiff so bad, that the Judge was forced to recuse herself in this case. These are only a few examples of how the paralegal furthered her threat of criminal extortion against the Plaintiff by use of distributing Bar complaints to Courts and the Legal Community. It has been determined this former paralegal has distributed her Bar Complaint to over 50 recipients, as well as, sent mass emails to over 55 of the Plaintiff's clients containing this complaint. Yet, after repeated requests

for TFB to cease these actions, they continue to fail to do so and continue to keep her bar complaint under active investigation against the Plaintiff.

30.    Staff Investigator, David Pennell, for the Florida Bar has been appointed to handle all investigations involving the Plaintiff.

31.    The Plaintiff informed TFB and David Pennell at the onset of the voluminous complaints that had been filed against the Plaintiff, that the majority of the complaints were made in furtherance of criminal extortion and criminal conspiracy. Along with written evidence, affidavits, witnesses, negating these claims alleged in these Bar Complaints. However, TFB failed to investigate this evidence, nor did they include it in any reports given to the grievance committee prior to their probable cause findings. It is important to note, TFB continues to keep cases open that were in furtherance of carrying out criminal extortion. Criminal Case 48-2022-NM-003572 remains pending with the 9th District Circuit of the State Attorney.

32.    TFB had notice and allowed their investigation process to further out crimes of extortion, crimes of conspiracy, murder threats to the Plaintiff's young children, ADA violations, discriminatory public harassment against the Plaintiff involving TFB names being distributed to the public within discriminatory public statements. The Plaintiff has endured severe emotional harm from TFB's  investigation process for two (2) years and continues to endure harm, ultimately leading to the decline of her mental

health, and resulting in the Plaintiff's most recent bar complaints filed by Judges. It is important to note, TFB had notice of the Plaintiff's mental state in July 2022, when Plaintiff reached to TFB requesting to take a leave from the practice of law, due to her mental health directly related to actions she endured during the Bar's investigative process that could have been avoided.

33.   In 2022, One of the criminal conspirators, whom has never been a client to the Plaintiff's husband nor ever communicated with him, filed a Bar Complaint on the Plaintiffs husband, Michael Ferderigos, Esq., who has practiced law for over 20 years with no disciplinary record. TFB refused to dismiss this complaint against Michael Ferderigos, Esq. During a conversation between Michael Ferderigos and Investigator, David Pennell, Mr. Pennell confided that TFB was only keeping this case open because he is married to the Plaintiff and proceeded to attempt to pressure him to write an affidavit against the Plaintiff and he would drop Michael Ferderigos, Esq. Bar Complaint. Thus, TFB attempted to extort the Plaintiff's husband to give statements against his wife, by holding an unwarranted Bar Complaint as leverage. His bar complaint continues to remain open to date.

34.   TFB clearly, falsified the Staff Investigators report, resulting in a finding for probable cause, placing the Plaintiff's property, which is her law license

at risk by reporting false information that was material in the grievance committee's finding of probable cause against the Plaintiff.

35.   Staff Investigator of the TFB falsified the investigative report in the following ways:

36.   On page 18, lines 17-21, of the Court transcript from a hearing held on Thursday, September 9, 2021, Complainant, Michael Lundy, Esquire tells the Court: allegations 37-40

> I want this Court to be aware -- I think I'm obligated to tell you this. Ms. Ferderigos, herself, signed a conditional plea, guilty plea; for a consent judgment for her own ethical violations.

1. In the Investigative Memorandum made by David Pennell, staff investigator and turned over to the Grievance Committee he states:

> Ms. Ferderigos stated that at the beginning of the hearing that took place on September 9, 2021 Mr. Lundy immediately stated to the court that Ms. Ferderigos is on probation with The Florida Bar. (In the copy of the transcript attached as Exhibit B *__I do not find that statement to the Judge__*)

37. Thus, once again Staff Investigator, makes false statements in his report regarding the Plaintiff prejudicing her with the Grievance Committee, by making it appear that is dishonest.

38.   Staff investigator falsely reports in another report given to the grievance committee, that he never spoke to Michael Ferderigos, Esq. and that

Complainant was not notified of a $1000 sanction until June 22, 2021. However, he in fact spoke to Mr. Ferderigos, who verified he was there on May 12, 2021, immediately following the hearing and witnessed first-hand the Plaintiff informing Complainant that she was sanctioned a $1000 for failing to comply with discovery and proceeded to tell her that she needed to pay opposing counsel directly on the specified dates ordered by the Court. Plaintiff also provided Staff Investigator with another attorney who was present during this time, named Andrew Propst, Esq. who also witnessed this conversation. However, staff investigator failed to interview him, despite being given his information by the Plaintiff. In addition to providing two witnesses, Staff Investigator was given an outlook teleconference sent to Complainant, where she had accepted the teleconference for May 12, 2021 at 3pm. Affidavit confirming this information were submitted to TFB.

39.  Staff Investigator falsely alleges that Complainant did not know about this hearing and in result was sanctioned. However, Complainant never made this allegation in her initial bar complaint filed on August 2, 2021. Furthermore, the Notice of Hearing on the Motion for Contempt was filed on (3-08-21). And Plaintiff stated that she informed Complainant of this hearing over the phone after receiving the Notice of Hearing. Additionally, Plaintiff sent Staff Investigator an email sent directly to Complainant on 5-11-21, a copy of the Motion to be heard & attached exhibits for the May 12,

2021. Thus, it was clear Complainant was aware there was a hearing taken place in her case on May 12, 2021. However, this uncontested fact given to the Staff Investigator was left out of the Staff Investigators report.

40.    The Plaintiff has reached out to remedy these issues several time with the Board of Governors of the Florida Bar, however, has continued to be ignored.

41.    The Plaintiff it now forced to seek relief in Federal Court for not accommodating her ADA protections, denying her Due Process by having to remedy to contest any orders entered by the Referee that violate her constitutional rights.

## COUNT I. DECLARATORY RELIEF SOUGHT UNDER FEDERAL DECLARATORY JUDGMENT ACT

42.    Plaintiff incorporates paragraphs 1-46 into this count.

43.    When a claim seeking relief under Florida's Declaratory Judgment Act is removed from state court to federal court, the court construes such claim as an action for declaratory relief under the federal Declaratory Judgment Act. Cafe La Trova LLC v. Aspen Specialty Insurance Company, S.D.Fla.2021, 2021 WL 602585. Declaratory relief proceedings are not intended for questioning of judicial decrees already entered, but where decree has become source of definite rights and is unclear or ambiguous,

relief may be granted. Koscot Interplanetary, Inc. v. State ex rel. Conner, App. 4 Dist., 230 So.2d 24 (1970).

44.    The Plaintiff seeks a Declaratory Judgment on the following issues:

(1) Direction on relief from the Referee's order denying the Plaintiff's continuance, when the Plaintiff cannot seek relief from the Florida Supreme Court pursuant to the Florida Supreme Court's Order citing Rule3-7.6(h)(5)(B) and clarification on whether this Rule inhibits the Plaintiff from seeking relief from the Florida Supreme Court from the Referee's orders.

Florida Supreme Court Order Cites:

Plaintiff is again advised that, pursuant to rule 3-7.6(h)(5)(B), Rules Regulating the Florida Bar, all pleadings, motions, notices, and orders filed after appointment of a referee must be filed with the referee, not with the Florida Supreme Court. While this case is pending before the referee, any future filings from Plaintiff that are not authorized for filing in this Court pursuant to the Rules Regulating the Florida Bar will not be docketed in this case.

(2) Clarification whether TFB can take measures to protect attorney-client privilege information during their disciplinary investigations, specifically, what measures TFB can take to protect this confidential information during a disciplinary investigation

Rule 3-7.1(A) states:

(b) Scope of Confidentiality. All records including files, preliminary investigation reports, interoffice memoranda, records of investigations, and the records in trials and other proceedings under these rules,

except those disciplinary matters conducted in circuit courts, are property of The Florida Bar. All of those matters are confidential and will not be disclosed except as provided in these rules. When disclosure is permitted under these rules, it will be limited to information concerning the status of the proceedings and any information that is part of the public record as defined in these rules. Unless otherwise ordered by this court or the referee in proceedings under these rules, nothing in these rules prohibits the complainant, Plaintiff, or any witness from disclosing the existence of proceedings under these rules, or from disclosing any documents or correspondence served on or provided to those persons except where **disclosure is prohibited in chapter 4 of these rules or by statutes and caselaw regarding attorney-client privilege**

(3) Clarification as to why TFB refused to take the recommendations of the ABA McKay Report, that gave recommendations that would have prevented have taken place to harm the Plaintiff and her clients during this investigation by a local committee. And whether or not TFB rules for disciplinary investigation are constitutional and affords proper due process.

WHEREFORE, the Plaintiff seeks declaratory relief in the form of an order declaring Rule3-7.6(h)(5)(B), Rule 3-7.1(A) unconstitutional and ambigious under First Amendment, Fifth Amendment, and Fourteen Amendment, as it denies the Plaintiff relief from a referee's order by denying the Plaintiff access to court and ultimately "landlocking" the Plaintiff from contesting any order given by the referee. The Plaintiff seeks declaratory relief on the actions TFB

can take to protect attorney-client privileged information during an investigation, and the reason TFB is one of the few states to take the ABA recommendations of the McKay Report recognizing the issues that have arisen in the Plaintiff's case and gave guidance and recommendations to preventive measures to be taken

## COUNT II. AMERICANS WITH DISABILITIES ACT

45.     Plaintiff incorporates paragraphs 1-46 into this count.

46.     Title II of the Americans with Disabilities Act applies to and restrains states and state agencies from discrimination against citizens on the basis of disabilities, real or falsely imputed. The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay. Fla. Const. art. I, § 21 For purposes of due process, the opportunity to be heard must be at a meaningful time and in a meaningful manner. U.S.C.A. Const.Amend. 14; West's F.S.A. Const. Art. 1, § 9.Borden v. Guardianship of Borden-Moore, 818 So. 2d 604 (Fla. Dist. Ct. App. 2002) Right to access the courts is specifically mentioned in state constitution and, therefore, it deserves more protection than those rights found only by implication. West's F.S.A. Const. Art. 1, § 21.Mitchell v. Moore, 786 So. 2d 521 (Fla. 2001)

47.   The Plaintiff should be afforded protections under the ADA. Attorney's bipolar disorder was "disability" under Americans with Disabilities Act (ADA). Americans with Disabilities Act of 1990, § 201(2), 42 U.S.C.A. § 12131(2). <u>The Fla. Bar v. Clement</u>, 662 So. 2d 690 (Fla. 1995), <u>as amended</u> (Nov. 28, 1995). The ADA applies to the City because it is a "public entity" as defined by title II. 42 U.S.C. § 12131(1).

48.   The Plaintiff should be afforded meaningful participation in her trial and be allowed to adjust to her new medication for three months before participating in her trial, as recommending by her psychiatrist, who she was referred to thru the FLA, as well as the therapist from the FLA, as entity of TFB.

49.   Furthermore, the Plaintiff should not have to endure discriminatory statements about the Plaintiff's mental health that was published and tagged TFB and Staff Investigators names when TFB and Staff Investigator had full knowledge and could have taken measures to stop it.

WHEREFORE, the Plaintiff seeks injunctive relief to allow her to adjust to her medication as been recommended by her psychiatrist so she can meaningfully participate and access the Court as afforded to her under the ADA. Furthermore, the Plaintiff seeks injunctive relief to cease publishing all discriminatory statements where TFB and Staff Investigator's names are tagged.

## COUNT III. FLORIDA CIVIL RIGHTS ACT

50.    Plaintiff incorporates paragraphs 1-46 into this count.

51.    Under the Florida Civil Rights Act (FCRA), the duty to accommodate is triggered only when an individual makes a request that is direct, specific, and identifies how it is linked to his disability.   Moreira v. American Airlines, Inc., S.D.Fla.2016, 157 F.Supp.3d 1208. The existence of a disability is a prerequisite to entitlement to a reasonable accommodation under the ADA and the Florida Civil Rights Act (FCRA).   Corning v. LodgeNet Interactive Corp., M.D.Fla.2012, 896 F.Supp.2d 1138. Under the Florida Civil Rights Act (FCRA), the duty to accommodate is triggered only when an individual makes a request that is direct, specific, and identifies how it is linked to his disability.   Moreira v. American Airlines, Inc., S.D.Fla.2016, 157 F.Supp.3d 1208.

52.    The Plaintiff requested the Court to continue her trial for three months as recommended by her psychiatrist, who she was referred to thru the FLA, as entity of TFB.

53.    The Plaintiff should be afforded meaningful participation in her trial and be allowed to adjust to her new medication for three months before participating in her trial.

54.    Furthermore, the Plaintiff should not have to endure discriminatory statements about the Plaintiff's mental health that was published and

tagged TFB and Staff Investigators names when TFB and Staff Investigator had full knowledge and could have taken measures to stop it.

55.     WHEREFORE, the Plaintiff seeks injunctive relief to allow her to adjust to her medication as been recommended by her psychiatrist so she can meaningfully participate and access the Court as afforded to her under the FCRA. Furthermore, the Plaintiff seeks injunctive relief to cease publishing all discriminatory statements where TFB and Staff Investigator's names are tagged.

## COUNT IV. FLORIDA FALSE CLAIMS ACT

56.     Plaintiff incorporates paragraphs 1-53 into this count.

57.     In a federal or Florida False Claims Act claim, a party must prove (1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or ***approval;*** (3) with the knowledge that the claim was false. U.S. ex rel. Heater v. Holy Cross Hosp., Inc., S.D.Fla.2007, 510 F.Supp.2d 1027.

58.     The Plaintiff holds property with her law license in the state of Florida.

59.     Staff Investigator and TFB submitted false information in their report to the grievance committee on material facts, ultimately leading to a finding of probable cause.

60.     These reports were sought to be approved by the grievance committee

61.  Staff Investigator and TFB were in receipt of uncontested evidence, demonstrating they had full knowledge that these reports contained false facts

WHEREFORE, the Plaintiff requests relief in accordance of the False Claims Act and penalties to be ordered by TFB for their intentional false reporting that has led to the Plaintiff's property to possibly be taken away or in the alternative, for TFB to correct these false statements pending before the Court to remedy and mitigate damages.

## CONCLUSION

The issues alleged in the Plaintiff's complaint bring rise to serious issues within TFB disciplinary process and a direct consequence from TFB's failure to take the recommendations given to them from the ABA in the McKay Report. The Plaintiff and the Public have suffered serious damages over TFB's failure to take any action to protect the Plaintiff and her clients during the course of this investigation, ultimately harming the Plaintiff's mental status. The Plaintiff believe the relief being sought, will help prevent these types of issues from arising in the future. A disciplinary process and investigation should not result in severe harm to the Public (her clients), or harm to the Attorney.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable

    I SOLEMNLY SWEAR, UNDER PENALTY OF PERJURY, THAT THE

FOREGOING FACTS, UPON INFORMATION AND BELIEF, ARE TRUE,

CORRECT, AND COMPLETE, SO HELP ME GOD.

*Leslie Ferderigos*

> /s/Leslie Ferderigos, Esq
> FIGHTING FIRM
> 10454 Birch Tree Lane
> Windermere, FL 34786
> 407-371-7855
> leslie@fightingfirm.com
> Bar No. 0127526